We have Mr. Tomeo before Mr. Williams-Dorsey, you have three minutes reserved for rebuttal. Mr. Tomeo, you can begin whenever you're ready. Thank you. Your Honors, may it please the Court, I'm Peter Tomeo. I represent the appellant, Mr. Williams-Dorsey. This is a case in which there are two issues, and they're related. One is the denial of a fair trial, and the other is the admission of other act evidence under Rule 4.4b. This is a case in which Mr. Dorsey went as a pro se, principally because he could not get his attorneys to speak with him about the discovery in the case. And then he found himself caught between the difficulty of being pro se, being housed in Albany County Jail and Montgomery County Jail, distanced from any support whatsoever. And he had a protective order, which while, and I'm certainly not here to argue that protective orders aren't necessary, was not tailored to his situation. When you look at the application, it wasn't based anything on what Mr. Williams-Dorsey did, or was accused of doing, but on what other people had done, other defendants had done. And then it was applied in a very broad way, in which even transcripts of conversations in which Mr. Williams-Dorsey was- But you're not challenging, I don't think you're challenging on appeal, the order itself, the entry of the order, right? No, we're challenging- I'm just saying it affected his preparation, right? Its application. All right, but the judge, this came up, the judge initially gave him four hours at the courthouse to review it, and he complained. And then the judge gave him three more sessions, which I think added up to another 12 additional hours. We have about 16 hours with the documents, so- But 16 hours in this kind of a case, Your Honor, isn't enough? Because you're talking about 16 hours of time he's going to be in the courthouse. And his standby counsel put in her papers, which we included in our appendix, that that involved also time when Mr. Williams-Dorsey had to be produced. At one point, it included a pretrial hearing that was held, and was taken out of that 16 hours. How much material was it? There were computer programs on the downloads from his cell phones. You know, we're talking about, and you get a little confused from the record here, because a lot of what's discussed is the James material, which I think was- It's a slightly different question, because I could debate how much time would be enough, depending on what the materials were. But now with hindsight, what materials out of those things, if he had more time, would he have been more effectively be able to use at trial that would have resulted in a different verdict? He didn't point to any in the brief. Well, he didn't have enough time, and he could have used these documents better. That would be something you'd have to establish, right? Not just that he didn't have enough time. Well, I think generically we can establish that. I agree with you, Your Honor. The record is not complete as to what was withheld. The discovery is not part of the record. Nothing was withheld, right? So what was withheld under protective order from him being able to have a copy of. But he's pro se. He's trying to work in his cell, and he can't have access to what would be rudimentary discovery. But he didn't have to be pro se. It was his choice, and so some of these difficulties are his own doing. Well, but that's not really accurate, Your Honor. Because he says, and his counsel at the time he went pro se, his complaint was his counsel was not reviewing the discovery with him. His attorney did not oppose that. He did not deny that. And then Mr. Williams-Dorsey didn't ask to go pro se. He asked for another attorney. And when the Judge Scullin said, no, you can't just go through the entire CJA roster until you find somebody you like, he told you, your choice is stick with Mr. LaRose or go pro se. And he chose to go pro se. And at that point, Your Honor, our argument is that the fact that it's going to create difficulty for him did not excuse the court from making sure that the discovery obligations were maintained, were satisfied, and that he had an adequate time to prepare. You complained about the 3500 material as well, but the one time, the government points out the one time where he said I need additional time, the judge gave him additional time for the case agent. There was no other time where he said, Judge, I need a few more minutes for this 3500 material, right? But what did, yes, Your Honor, that's the only one I pointed to because it's the only one in the record. And, Your Honor, but what did the judge do? The judge said, I'm going to give you additional time. But instead of giving him additional time, he has him produced a courtroom. And he asked him in front of the courtroom, do you have enough time? And he says, give me a little more time. And then the judge says, are you ready? I mean, you know, in the reality of what goes on in the courtroom, Judge, I mean, look, if he was an attorney, you know, or if he was in any way trained- You mentioned the 404B. Do you want to address that? I see you only have about two minutes left. I'm having a hard time. I understand your argument about driving the illegal immigrants and that that may not be probative. But why isn't it probative that the guy who testifies, Mr. Logan, he, on two prior occasions, was in a car with him when Mr. Logan says they were involved in drug trafficking in the cases about drug trafficking. Why isn't that classic 404B to establish how their criminal relationship developed and to show that he didn't lack intent with respect to the transaction here? Why isn't that classic 404B? Well, because the 404B argument is being made that it's showing narcotic smuggling, Your Honor. And there is no evidence here of smuggling. This is, you know, there is some trafficking. It could become- You make a big deal about the word smuggling. But I think, as you know, in drug trafficking cases all the time, whether there's an international aspect or not, it's certainly highly probative for a cooperating defendant to say this is how our relationship developed. We did two prior deals together, whether it's international or not. And it's also probative on intent, whether it involved smuggling across the border or not. It still involves illegal drug trafficking, right? Well, Your Honor, respectively, I disagree with the facts of this case. I think that what was being done was these episodes which were not part of the crime that was being charged. It was a whole different narcotic- different illegal drugs. This case was a methamphetamine case. This was a cocaine. And one was marijuana. And it was being portrayed as being him being part of this ongoing international conspiracy to bring drugs, introduce drugs into the area. And for that reason, Your Honor, I think that, at a minimum, the court should have been giving a contemporaneous instruction. And the judge didn't do that. It was put before the court. It was argued by the prosecutor that this was part of an ongoing- No contemporaneous instruction was requested, right? Okay. It was given at the end, but it was not contemporaneously requested, right? That's right, Your Honor. And that's a failure of a pro se litigant. All right. Thank you. Thank you, Your Honor. Okay. We'll hear from comments. Thank you, Your Honor. May it please the court, Nicholas Commender on behalf of the government. I will start with Appellant's first point about the alleged denial of a fair trial, which is, of course, an umbrella of several different arguments. But I think that virtually all of the defendant's complaints come back to his choice to proceed pro se in this case. There is no attack by the appellant on the Feretta hearing. I think the Feretta hearing was done by the magistrate judge in a way in which the defendant was properly advised of the risks of proceeding pro se, including the very risks that now give rise to a number of the issues on this appeal. The judge even went to the trouble of adjourning the Feretta hearing for a week to give the defendant even more time to proceed. And I think it's also telling that at that point the defendant made clear that he had been thinking about this decision for months, that he wanted to proceed in that fashion. The defendant had at that point already gone through two attorneys. Both times the court made clear that it did not believe that the attorneys had failed in their representation. It was based on the defendant's actions. And as we pointed out in the brief, the defendant in this case was a difficult litigant. He regularly ignored the court's rulings during trial. He asked questions that were inappropriate. He argued to the point where his own standby counsel had to admonish him to stop and not to speak to the court in that way. And I think that in the face of that, the district court did the best that it could to both ensure that there was a trial that proceeded and hewed to the rules of evidence, while also trying to give the defendant opportunities to present his case. With respect to the protective order, I think Judge Bianco, you hit the nail on the head. The defendant, I think the easiest way to resolve that issue is, first of all, there is no dispute that the protective order was appropriate as entered in this case. The defendant had access under the protective order to everything. There was nothing that was held back from him. It was just that certain materials were ones that he could not keep with him in the jail. He was housed in Albany County? They weren't housing him in Onondaga County? He was housed in, I think, a total of three different facilities during the course of pretrial proceedings. I believe during the trial, Your Honor, it was Albany County where he was housed. Where was he tried? He was tried in Syracuse, Your Honor. That's a good hour and a half. It is, but I've been driven in many times in my life, transferred, going from western New York to Albany. And where was it that he was allowed to look at the documents? So all of the protected materials were ones that he needed to review with his standby counsel. The court did make payments. Standby counsel, Syracuse counsel? Yes, Your Honor. But the court, during the presal proceedings, I believe for the first time, it was four months before trial, Judge Scullin made arrangements for the defendant to be brought to the courthouse to review the materials with a standby counsel. Because there was no detention facility that could facilitate that, him being in Albany and counsel being in Syracuse? That may be, Your Honor. I would also note that there is nothing in the record, it's possible that it was done ex partem, I wouldn't know. But there is certainly nothing in the record where the defendant asked for another meeting, suggested that he needed more time, and to Judge Bianco's point, the defendant has not raised on appeal a single document to argue that had I had more access to this document, it might have had some impact on the trial. And that's not for a lack of ability to do that. His standby counsel took over the proceedings and represented the defendant for purposes of sentencing and post-trial motions. Standby counsel had all of those materials at standby counsel's request. She was then serving as counsel. She received nine months worth of... This was the federal defender herself, right? No, Your Honor. The federal defender first represented Mr. Williams-Dorsey until he fired them. And then he was assigned someone from the CJA panel. Mr. Williams-Dorsey fired him. And then finally, the judge assigned a new lawyer to serve as standby counsel. And that attorney, the defendant appeared to get along well with and handled the post-trial submissions, but in that argument did not raise, although she raised generally a claim that the protective order impeded his ability to prepare for trial. And although she had access to all of the materials and more than nine months to prepare post-trial motions, she did not raise a single document that had the defendant had more access to that document. Can I ask you about the 404B? As I said before, I understand the argument with respect to the money and the drugs during the car stops, but I'm having a hard time understanding what the government's argument was as to his transportation of people illegally in the United States and Arizona after they arrived. They're in the car with him. He pleads guilty to being an accessory after the fact. How is that probative? The government didn't even move because Logan wasn't in the car, right? That's correct, Your Honor. The only ground, I guess, was knowledge and intent, right? Yes, Your Honor. How is that probative, whether or not he had knowledge and intent about a drug deal in Syracuse? I'm having a hard time understanding that. Well, we think that it's probative for a couple of reasons. First of all, I think that it does show that he's generally in the business of smuggling, transporting, whether it's drugs. There was no evidence that he was involved in bringing them across the border, right? The government didn't put on evidence of that. He just put on evidence that he had some involvement once they arrived here, getting them from one place to another. That's correct. We did not put on evidence that he was the person who brought them across the border. There is evidence in the record that he was apprehended. I believe that the Border Patrol officer said that it was approximately 20 miles from the Mexican border. And in your proof here, the deal in Syracuse wasn't centered around some smuggling operation. I know there was a connection, obviously, to Mexico, but the jury didn't even hear any of that, right? That's correct, although I would also argue, Your Honor, that in addition to the knowledge and intent argument, which I can appreciate Your Honor is skeptical of, I also believe that it was important to showing that bond of trust between Logan because Logan also testified about that incident. And it was part of the natural progression when Logan was describing that he first had these- I was thinking of that, but the government specifically did not argue that in district court. The government was very clear that they were not arguing. Logan did say he recruited me, and I declined. So I was thinking, oh, that's why it showed the breadth of their criminal relationship. But the government didn't even move with respect to that particular act as to Logan's relationship. Am I wrong on that? I believe you're right that it wasn't part of our pretrial motion, but I also think it is appropriate for this court to consider both when it's evaluating whether that testimony and that evidence is properly admitted that it was part of the story that Logan was telling and included the fact that Logan at that point said he did not want to engage in that conduct. But then when the next opportunity came up to be involved in drug dealing, he was game. And that's why William Sorcey could reach out to Logan and discuss that issue. The government argues in any event that it would be harmless in the grand scheme of things, that particular act? Certainly, Your Honor. I think that both because in the scheme of that particular act, Judge Scullin was presented with the argument that it was overly prejudicial. He evaluated that argument. He reached the conclusion that compared to the very- Although he did not perform a Rule 403 balancing, right? He skipped that or just didn't articulate that. Well, I believe that this court has recognized in the case that's slipping my mind but cited in our brief that when the district court is presented with the argument about it being unfairly prejudicial, when the district court then rejects that argument, we presume that the district court balanced it, that it considered those things. And that certainly happened in this case when that was argued below. Certainly compared to the conduct at issue in this case that involved 20 kilograms of methamphetamine and a loaded handgun, I don't think that appellant can credibly argue that the allegations of that alien smuggling conviction were overly prejudicial. And also in the scheme, Your Honor, of the overall harmless error standard, even if the court were to find that that issue was error, the evidence in this case was overwhelming. It involves the defendant being caught in the middle of a drug deal. On a recording where he discussed doing future deals, noted that he was the head of transportation going forward. The 924C charge was based on a loaded handgun that was in his waistband, that there was testimony that it had actually been taken from his co-conspirator, Logan, to go and do the drug deal. Williams-Dorsey confessed on the day of his arrest. And the evidence at trial included not only all of that information, but also Logan's testimony about how they got involved in the scheme together, and also contemporaneous messages between the two of them. So in the context of the compelling evidence in this case, the errors that are raised, both with respect to the fair trial claim, and also with respect to the 404B arguments, we think do not justify reversal. And therefore, I see my time is up. And unless the court has any further questions, we would rely on our papers. Thank you. Thank you, Your Honor. Thank you. I want to start where the prosecutor left off, which is on the overwhelming evidence. I think it's important for the court to recognize Mr. Williams-Dorsey did not dispute that. He wanted to raise a defense of duress. And he made an application, and the judge held a hearing prior to the trial. We've discussed this in our briefs. The judge rule precluded him from raising that. But in the hearing, the judge did not allow him to call any witnesses. He had to rely on his own testimony. And importantly, the judge accepted his version and said, even if all that is true, and you can question whether or not it was completely accurate, but assuming it's true, the judge said he had all these opportunities when he got to the United States to alert law enforcement in that you can't establish the element that you did not have. You couldn't take reasonable steps to alert law enforcement. What was wrong about that part of the ruling? Because on that part of the ruling, he was ruling on the credibility of Mr. Williams-Dorsey. He said, I don't believe you. He said, and I think- On a footnote, he didn't believe one aspect of what he said. But he was very clear that even assuming this is all true, it was a whole paragraph. The court finds that he's failed to present some evidence of every element. And specifically, he did not have a reasonable opportunity to escape the threatening situation, either by fleeing or by seeking intervention. And actually, he said he also put himself in that situation. He had two different grounds, even accepting the whole story. Our position was that that should have been an issue on his credibility, and it should have gone to the jury, and he should have been allowed to have an investigator to look into the case. Specifically, he wanted to investigate the relationship between individual number one and the confidential source, neither of whom testified and neither of whom were identified. The court basically said, you're not going to find these people based on what the prosecutor told them. The court said, we need more information. The magistrate judge said, you have to give more information than your one sentence or sometimes less than one sentence. And then he didn't do that. But that's why he wanted the investigator. He said he wanted the investigator to go out and interview people. You have to make a threshold showing what you want the investigator for. The district court judge doesn't give an investigator any pro se defendant or even an attorney who wants it, right? You have to articulate what you need it for. Well, he did, arguably. I'm sorry, Your Honor. But he did articulate sufficiently. He said he wanted somebody to go out and interview him. To say what the judges were saying, both the magistrate and the district judges, tell us what the witness is going to say. But that was the point of needing the investigator, to go out and find out what the witness was going to say. How could he say, look, I know what this witness is going to say, before he had any reason, a way of contacting him or finding that out. And Judge Cohen's solution to that was, well, I'll allow your standby counsel to set up a telephone call. And you can call these people up and interview them yourself. But part of this was he couldn't get the discovery as to who these individuals were or how to locate them. And one last thing, if I could have just one more moment of your time. To say, as the prosecutor said, that he fired Mr. LaRose is not really totally accurate. Mr. LaRose, in response to his motion for a new attorney, put in an affidavit which disqualified Mr. LaRose from continuing to be his attorney. He disclosed attorney-client communications about the strength of the government's case and the advice he gave, which wasn't the issue. The issue was his access to discovery, which was denied by the government through the operation of protective order. And on that basis, your honors, we ask that you reverse this case. And we thank you for your time. Thank you. Thank you to both of you who have a reserved decision. Have a good day.